IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-01526-MSK

SANDRA LYDON,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**OPINION AND ORDER REVERSING AND REMANDING
THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint **(# 1)**, the Plaintiff's Opening Brief **(# 12)**, the Defendant's Response **(# 13)**, and the Plaintiff's Reply **(#14)**. For the following reasons, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

## I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II.    BACKGROUND

**A.**    **Procedural History**

Plaintiff Sandra Lydon ("Ms. Lydon") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying her claim for disability insurance benefits ("DIB") under the Social Security Act. In February 2015, Ms. Lydon filed for DIB, claiming

she became disabled as of October 10, 2012.  **(# 9-6 at 173-76)**.  Following a hearing held on April 26, 2017 before an Administrative Law Judge ("ALJ"), Ms. Lydon received an unfavorable decision in May 2017 ("Decision").  **(# 9-2 at 14-26)**.  Ms. Lydon appealed that Decision to the Appeals Council.  However, on April 25, 2018, the Appeals Counsel denied her Request for Review.  **(# 9-2 at 1-7)**.  Ms. Lydon now appeals the final agency action to this Court.

**B.   Factual Background**

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis.  Ms. Lydon was born in July 1965.  **(# 9-6 at 173)**.  She was 47 years old on her initially-alleged disability onset date in October 2012 and 51 years old at the time of the ALJ's Decision.  **(# 9-6 at 173)**.  She has a high school education and work history as a head cashier for a building supply retail store.  **(# 9-7 at 193, 220)**.

On October 10, 2012, Ms. Lydon had surgery to treat a cystocele (a prolapsed bladder) with mesh and a suburethral sling.  **(# 9-8 at 299-306)**.  Due to surgical complications including unusually significant pain radiating down her right leg, Ms. Lydon underwent a second surgery the following day to remove a suture that was compressing a nerve.  This ultimately led to an injury to her sciatic nerve.  **(# 9-8 at 308; # 9-10 at 442)**.  Ms. Lydon continued to have chronic pain and spasms and has undergone the following multiple subsequent surgeries: October 2013 (mesh removal) **(# 9-12 at 551-555, 588)**; December 2013 (posterior repair and sling) **(# 9-12 at 553-554; # 9-13 at 600)**; March 2014 (repair prolapse using tissue rather than mesh) **(# 9-13 at 607)**; and April 2014 (drain implanted but failed to work properly) **(# 9-13 at 617)**.  As a result of numerous complications from these procedures, Ms. Lydon had urinary and rectal catheters placed and must self-catheterize daily.  Ms. Lydon reported she experiences chronic pain in her

pelvis, back, and legs. **(# 9-16 at 744-85; # 9-2 at 22)**. In addition, the record reflects mental health impairments, including a diagnosis of anxiety and depression, which are the focus of this appeal. However, since Ms. Lydon does not contest the ALJ's treatment of the medical records and opinions or the ALJ's findings of the relevant conditions and impairments, the Court need not further detail the medical record. **(# 12 at 15)**.

**C.    The ALJ's Decision**

To determine disability, the ALJ analyzed this case pursuant to the sequential five-step inquiry. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1998) (explaining the five steps in detail). At step one, the ALJ found Ms. Lydon had not engaged in substantial gainful activity since her alleged onset date of October 10, 2012. **(# 9-2 at 16)**. At step two, the ALJ found Ms. Lydon had the following severe impairments: pelvic organ prolapse; vaginal mesh placement and removal; pudenal neuralgia; carpal tunnel release; and right shoulder surgery. **(# 9-2 at 17)**. The ALJ also noted that Ms. Lydon has been diagnosed with anxiety and depression. However, the State agency psychological consultant found this impairment to be non-severe, and the ALJ concurred giving this assessment "great weight." **(# 9-2 at 17)**.

At step three, the ALJ found Ms. Lydon's impairments did not meet or equal the severity of a listed impairment in the appendix of the regulations. In making this finding, the ALJ considered Ms. Lydon's mental impairments, finding she had mild limitations in the activities of: "understanding, remembering, or applying information;" "interacting with others;" "concentrating, persisting, or maintaining pace;" and "adapting or managing oneself."[1]    **(# 9-2**

---

[1]    The ALJ's analysis followed the process for evaluating mental impairments, and the

**at 17-18)**.

The ALJ then assessed Ms. Lydon's Residual Functional Capacity ("RFC") and determined that:

> [Ms. Lydon] has the residual functional capacity to perform less than the full range of light work as defined in 20 § C.F.R. 404.1567(b) except: the claimant is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. The claimant is limited to sitting (with normal breaks) for about 6 hours out of an 8-hour workday. The claimant is limited to standing or walking (with normal breaks) for about 6 hours out of an 8-hour workday. The claimant is limited to pushing and pulling within the weight limitation of lifting and carrying. The claimant is limited [to] never climbing ladders, scaffolds or ropes. The claimant is limited to occasional balancing, stooping, kneeling, crouching, or crawling and climbing ramps or stairs. The claimant is limited to frequent bilateral overhead reaching and reaching in all directions. The claimant is limited to frequent handling, fingering and feeling. The claimant is limited to occasional exposure to extreme cold or heat and having no exposure to unprotected heights and moving mechanical parts.

**(# 9-2 at 18- 19)**. The ALJ then found, at step four, that Ms. Lydon was able to perform her past relevant work as a "head cashier I" as described in the Dictionary of Occupational Titles ("D.O.T.") 211.362-010, which is classified as sedentary, skilled work.. **(# 9-2 at 24)**. The ALJ noted that "the job of head cashier I has a specific vocational preparation ("SVP") rating of 5." **(# 9-2 at 24)**. Based on the testimony of the vocational expert ("VE"), the ALJ then made the alternate finding that although she is capable of performing her past relevant work, Ms.

---

categories of such impairments, as prescribed by the Commissioner's regulations. These include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and "paragraph C" criteria for describing adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

Lydon could perform jobs that exist in significant numbers in the national economy. **(# 9-2 at 24-25)**. Specifically, the ALJ determined that Ms. Lydon could work in occupations such as: credit card interviewer (sedentary unskilled work), document preparer (sedentary unskilled work), and food and beverage order clerk (sedentary unskilled work). **(# 9-2 at 25-26)**. The ALJ therefore found that Ms. Lydon was not disabled as defined by the Social Security Act.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).

Substantial evidence means evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although a reviewing court must meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

In addition, if the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings.

5

*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## IV. DISCUSSION

Ms. Lydon raises four challenges to the Commissioner's Decision: (1) after the ALJ found mild limitations as to understanding, remembering, applying information, interacting with others, concentration, persistence, and pace, the ALJ failed to account for that finding in formulating Ms. Lydon's RFC, as well as in the dispositive hypothetical question to the VE; (2) the ALJ's RFC finding was not supported by any medical opinions; (3) the ALJ mischaracterized Ms. Lydon's past job as a head cashier I and erred in considering it to be past relevant work; and (4) the ALJ failed to properly consider whether Ms. Lydon was able to sustain competitive work activity as defined by the Commissioner. Having considered these issues and the applicable law, the Court finds that reversal and remand is necessary due to several errors of law at step four.

At step four in the disability analysis, the ALJ is required to asses a claimant's RFC based on all relevant evidence, medical (physical and mental) or otherwise. 20 C.F.R. § 1545. Initially, the impairments, including mental impairments, which an ALJ identifies at steps two and three are distinct from the functional limitations which must be identified and described in an RFC. The RFC finding requires a "more detailed assessment." Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Bales v. Colvin*, 576 F.App'x 792, 797 (10th Cir. 2014). However, the RFC must be assessed based on all of the relevant evidence and must account for "all of [the claimant's] medically determinable impairments ... including [claimant's] impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)–(2). In addition, the "RFC assessment must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts []
and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting Social Security Ruling 96-8P)
(internal quotation marks omitted).

Further, "mental functions . . . 'are not skills but, rather, general prerequisites for most
work at any skill level.'" *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (quoting
*Wayland v. Chater*, 76 F.3d 394, 1996 WL 50459, at * 2 (10th Cir. 1996) (table)); *Vialpando v.
Colvin*, 2015 WL 1433293, at *6 (D. Colo. March 26, 2015) (stating "a limitation of skill level
just accounts for issues of skill transfer, not impairment of mental functions …") (citing *Chapo*,
682 F.3d at 1290 n.3). Agency guidance draws the same distinction:

> Because response to the demands of work is highly individualized, the skill
> level of a position is not necessarily related to the difficulty an individual
> will have in meeting the demands of the job. A claimant's condition may
> make performance of an unskilled job as difficult as an objectively more
> demanding job. … Any impairment-related limitations created by an
> individual's response to demands of work, however, must be reflected in
> the RFC assessment.

Social Security Ruling 85-15, 1985 WL 56857, at * 6.

The Tenth Circuit's discussion in *Wayland* is illustrative; and, although unpublished, was
cited with approval by the published opinion in *Chapo*:

> [W]hen mental impairments diminish a claimant's residual functional
> capacity, our cases generally require the production of expert vocational
> testimony or other similar evidence to establish the existence of jobs [the
> mentally impaired claimant could still perform] in the national economy to
> satisfy the Secretary's burden at step five. …
>
> Moreover, while there may be circumstances in which a particular mental
> limitation could be so obviously accommodated by a reduction in skill level
> that particularized vocational evidence addressing that limitation might be
> dispensed with, that is clearly not the case here. Indeed, deficiencies in
> concentration like plaintiff's may well be especially disruptive of
> production, and perhaps even physically dangerous to the claimant and/or

7

> her coworkers, in the kinds of repetitive tasks typically involved in unskilled work. In short, the tacit premise in the ALJ's analysis, *i.e.*, that a cognitive or emotional impairment may be functionally equated with the lack of a skill, as that term is employed in the Secretary's regulations, is wrong. Numerous authorities illustrate the basic point that intact mental aptitudes are not skills, but, rather, general prerequisites for most work at any skill level.

*Wayland*, 1996 WL 50459, at * 2 (citations and internal quotation marks omitted; alterations as in original); *see also Chapo*, 682 F.3d at 1290 n.3.

Here, the Court finds the ALJ's RFC was insufficient to account for the impairments the ALJ found, particularly the ALJ's finding of mild limitations in understanding, remembering, applying information, interacting with others, concentration, persistence, and pace. Indeed, the ALJ's RFC determination was silent as to any mental impairments whatsoever and relates only to physical impairments. No accommodation in the RFC relates to or accounts for the finding of Ms. Lydon's mental impairments or limitations.

In response, the Commissioner asserts that "even assuming that the ALJ should have included some limitation, any error was harmless because … the ALJ identified unskilled jobs in the national economy that [Ms. Lydon] could perform." (**# 13 at 13**). Although the Commissioner relies on the Tenth Circuit's decisions in both *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) and in *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) in support of its argument, the Court is not persuaded. Both *Smith* and *Vigil* held that the RFC limitations stated by the ALJ were sufficient to account for the impairments reflected in the evidentiary record. Neither *Smith* nor *Vigil* reflects a blanket rule that a generally-stated limitation to "unskilled" work is sufficient to account for any or all mental health impairments. Indeed, *Vigil* states that a "finding of a moderate limitation in concentration, persistence or

pace at step three does not *necessarily* translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil*, 805 F.3d at 1203 (emphasis added). *Vigil* also recognized the continuing viability of *Chapo*, in which the court found it "doubtful" that a "vague catch-all" limitation such as "to 'simple' work" would be sufficient where the record includes findings of specific "functionally distinct mental limitations" *Chapo*, 682 F.3d at 1290–91 n.3.

*Smith* and *Vigil* therefore left plain that there may be cases in which "an ALJ's limitation to 'unskilled' work [will] *not* adequately address a claimant's mental limitations." *Vigil*, 805 F.3d at 1204 (emphasis added). The fact that the ALJ in *Vigil* adequately accounted for a finding of moderate impairment "by limiting [the claimant] to unskilled work," *id.*, does not mean that a general restriction is adequate where the ALJ's own findings reflect more specific impairments, as is true here. In short, a case-specific analysis is required.

Conducting such a review, and informed by case authority, the Court finds that the mental impairments found by the ALJ here were not adequately reflected in his RFC formulation. *See Wiederholt v. Barnhart*, 121 F.App'x 833, 839 (10th Cir. 2005) (finding reversible error with the RFC's limitation to simple, unskilled job tasks given the specific mental limitations found by the ALJ). The ALJ's identification of unskilled work in the national economy that Ms. Lydon could perform was inadequate to account for a cognitive limitation as to understanding, remembering, applying information, interacting with others, concentration, persistence, and pace, given that skill levels are distinct from mental function.[2] *See Chapo*, 682

---

[2] This is especially true here where the ALJ determined Ms. Lydon could perform her past relevant work as a head cashier I, which has an SVP of 5. In *Vigil*, the Tenth Circuit reasoned that the ALJ's limiting plaintiff to an SVP of any one of two "adequately took into account his

F.3d at 1290 n.3; *Wiederholt*, 121 F.App'x at 839; *Vialpando*, 2015 WL 1433293, at *7. Further, as a consequence of this omission, the hypothetical question posed to the VE was also flawed. *See Chapo*, 682 F.3d at 1291 n.3 ("the failure of [an] ALJ to include his own mental restriction would be fatal to the validity of the hypothetical to the VE" (citing *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000)).

The Court finds the ALJ's omission of any mental limitations in his RFC contravenes applicable legal standards and thus, the disability conclusion at step four and the alternate conclusion at step five of the sequential analysis are not supported by substantial evidence. Thus, the finding that Ms. Lydon is not disabled is reversed, and the matter is remanded for reconsideration on steps four and five of the sequential analysis, applying the proper legal standards to the ALJ's formulation of Ms. Lydon's RFC.

Although reversal is required as set forth above, the Court addresses Ms. Lydon's other step four challenges in the interest of clarity. At step four, the ALJ found that Ms. Lydon was able to perform her past relevant work as a head cashier I (D.O.T. 211.362-010, sedentary skilled work), and was therefore, not disabled. **(# 9-2 at 24; # 9-7 at 245)**. However, Ms. Lydon argues that the ALJ mischaracterized her past job as head cashier I, a job description that does not exist in the Dictionary of Occupational Titles ("D.O.T."). Rather, her actual job was Supervisor, Cashiers (D.O.T. 211.137-101). Upon the Court's review, it appears Ms. Lydon's argument is accurate in that D.O.T. 211.362-010 refers to "Cashier I" and not "head cashier I" as referenced by the ALJ's Decision. *See* http://www.govtusa.com/dot/dot02a.html (last visited August 13, 2019). Interestingly, the Commissioner does not respond to this argument. Thus,

---

moderate limitations in concentration, persistence, and pace." *Vigil*, 805 F.3d at 1204.

on remand, the ALJ is directed to conduct the step four analysis anew and accurately characterize Ms. Lydon's past work, including whether it qualifies as "past relevant work" under the duration requirement set forth in 20 C.F.R. § 416.965(a) and whether she can sustain competitive employment "on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (July 2, 1996). The Court expresses no opinion as to the ultimate determination of whether Ms. Lydon is or should be found to be disabled.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED.** Upon reconsideration, the Commissioner shall consider all pertinent evidence through the 2017 hearing date. Judgment shall enter in favor of Ms. Lydon.

Dated this 14th day of August, 2019.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge